**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

YUSEF BROWN-AUSTIN,                                  Case No. 1:24-cv-397

    Plaintiff,                                            McFarland, J.
                                                      Bowman, M.J.
    v.

ANNETTE CHAMBERS-SMITH, et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff Yusef Brown-Austin, through counsel, filed this prisoner civil rights case against eleven defendants on July 29, 2024. This matter is now before the Court on Plaintiff's motion for an emergency restraining order (Doc. 46) and the parties' responsive memoranda. (Docs.49, 55, 68).   Also before the Court is Plaintiff's motion to supplement pleadings (Doc. 47) and the parties' responsive memoranda. (Docs. 50, 56). The motions will be addressed in turn.

### A.  Background and Facts

This is a re-filed action by Plaintiff Yusuf Brown-Austin, an individual incarcerated at Southern Ohio Correctional Facility ("SOCF").  This is Mr. Brown-Austin's third lawsuit stemming from mostly the same set of events. All three of Mr. Brown-Austin's claims stem from his transfer from the Northeast Ohio Correctional Center ("NEOCC") to the Ohio State Penitentiary ("OSP") on July 29, 2022. Mr. Brown-Austin alleged in all three actions that he was transferred to OSP without being afforded constitutional due process and has since been retaliated against for complaining about his transfer. Mr. Brown-Austin contends his security classification was raised without affording him due process.

The instant action was filed on July 29, 2024.  In addition to the new complaint, Plaintiff moved for preliminary injunctive relief. (Docs. 1, 3.) Within a few weeks, Plaintiff twice amended his original complaint. (Docs. 5, 8.)

In a prior order denying preliminary injunctive relief, Judge McFarland closely reviewed the allegations and claims presented in Plaintiff's Second Amended Complaint. In the interest of judicial economy, the undersigned adopts most of Judge McFarland's summary.[1]

> Plaintiff was initially incarcerated at the Northeastern Ohio Correctional Center ("NEOCC"). (Second Am. Compl., Doc. 8, ¶¶ 1, 2.) Defendant Core Civic Inc. operates the NEOCC pursuant to a contract with the State of Ohio. (*Id.* at ¶ 2.) During Plaintiff's incarceration, Core Civic failed to sufficiently staff the NEOCC. (*Id.* at ¶ 4.) To remedy this, the staff negotiated with the prison's gang leaders, agreeing that if the gangs reduced prison violence, the NEOCC would allow the gang leaders to "control the prison." (*Id.* at ¶ 20.)

> At first, Plaintiff willingly participated in this agreement. (Second Am. Compl., Doc. 8, ¶¶ 24-29.) In June 2022, however, a guard brought a loaded firearm into the NEOCC, which an inmate retrieved. (*Id.* at ¶ 30.) The NEOCC administration ordered Plaintiff to take the firearm from the inmate, but Plaintiff refused. (*Id.*) Later, Plaintiff's brother alerted the Ohio State Highway Patrol that the NEOCC ordered Plaintiff to seize a firearm from inside the prison. (*Id.* at ¶ 33.) This angered Defendants, who began to question whether they could trust Plaintiff. (*Id.* at ¶ 34.) Around the same time, Plaintiff was placed under heightened security after another inmate was attacked. (*Id.* at ¶ 31.)

> On July 29, 2022, Plaintiff was transferred to the Ohio State Penitentiary. (Second Am. Compl., Doc. 8, ¶ 36.) On August 1, 2022, Plaintiff attended a hearing concerning the attack at the NEOCC. (*Id.* at ¶ 38.) At the hearing, Plaintiff was "found guilty," despite "the officer say[ing] they had no evidence from the case." (*Id.*) Later that month, a security review was held, and Plaintiff was again placed under heightened security. (*Id.* at ¶ 39.) Plaintiff, however, was not present at the security review. (*Id.*) Plaintiff was then transferred to the Southern Ohio Correctional Facility ("SOCF"). (*Id.* at ¶ 44.) Since his transfer, Plaintiff has experienced threats and mistreatment from corrections officers. (*Id.* at ¶¶ 46-49.)

---

[1]Below, the undersigned separately addresses allegations in the above-captioned complaint that pertain to events after July 28, 2023.

(Doc. 37, Order and Opinion pp. 1-2, PageID 466-467.)

## B.  Motion for TRO

Plaintiff's current motion for a TRO asks the Court to enjoin Defendnats from increasing Plaintiff's security status to level E (super max) without Due Process or justification or from any further restrictions against Plaintiff for filing this lawsuit within 14 days. (Doc. 46 at. 1).  Plaintiff also asks the Court to Order Defendants to arrange for Plaintiff's security level to remain at 4AT (ET) or lower to prevent Plaintiff from being moved from his current unit back to level E.

For the reasons outlined below, Plaintiff's request for a TRO and injunctive relief is not well-taken.

In determining whether to issue a preliminary injunction, this Court must balance the following factors:

1.  Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2.  Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3.  Whether an injunction will cause others to suffer substantial harm; and

4.  Whether the public interest would be served by a preliminary injunction.

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet v. Lexington Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000)).

The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief. *In re DeLorean Motor Co*., 755 F.2d 1223, 1229 (6th Cir.

1985). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue*." Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc). "The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.,* 860 F.3d 844, 848-49.

A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distribs. of Ohio*, LLC, 860 F.3d at 849 (*quoting Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); see also Overstreet, 305 F.3d at 573. This same four-factor analysis applies to a motion for a TRO. *See Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). However, a TRO may issue only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1) (emphasis added).

On the record presented, Plaintiff has demonstrated none of the factors required to obtain a temporary restraining order or other preliminary injunctive relief. Namely, Plaintiff has not shown a substantial likelihood of success on the merits of his retaliation claims against Warden Davis and UMC Oppy relating to classification. In order to establish a retaliation claim, a plaintiff must establish each of the following elements: "(1) the plaintiff engaged in protected conduct; (2) and adverse action was taken against the

plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X*, 175 F.3d at 394).

Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to establish a claim for retaliation. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A plaintiff must be able to refer to evidence supporting material facts to sufficiently state a claim of retaliation. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir 2005) (quoting *Guitierrez v. Lynch*, 826 F.2d 1534, 1538-1539 (6th Cir. 1987). A prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)).

Here, Plaintiff has not provided any evidence supporting his allegation that Warden Davis and UMC Oppy engaged in any adverse action against him. Plaintiff alleges that he was subjected to an adverse action because his security classification was raised to ERH. However, the evidence presented by Defendants in opposition to Plaintiff's motion for a TRO shows that Plaintiff's security classification was raised at the instruction of Deputy Director Moore upon his assaulting of another inmate at NEOCC. (See Doc.49, Ex. 1, Oppy Decl. Ex. B).

Next, Plaintiff has not shown that he will be irreparably harmed unless Warden Davis and UMC Oppy are enjoined and ordered to reduce his classification.  The evidence submitted by Defendants shows that Plaintiff may be placed in ERH for a period of up to

five years. Notably, Defendant Oppy's declaration provides that Plaintiff was a member of a security threat group ("STG") or gang, was assigned an "Extensive Restrictive Housing" ("ERH") classification level after having assaulted another inmate with a manufactured weapon at NEOCC in 2022. (Doc. 49, Oppy Decl. Ex. B). After being assigned the ERH classification, the Deputy Director of Prison Offices for the Ohio Department of Rehabilitation and Correction ("ODRC"), Ernie Moore, made it a part of Mr. Brown-Austin's Individual Adjustment Plan ("IAP"), that he was to remain in ERH for up to five (5) years due to seriousness of his assault, which resulted in the inmate being treated in a medical facility outside the institution. Id.

Additionally, ODRC policy provides that while prison officials may consider reducing his classification to ERHT, they are within their discretion and authority to keep him at ERH should they find that the seriousness of his assault warrants his continued placement in ERH. (Doc. 49, Oppy Decl., Ex. A., Section VI.B.1. and VI.B.2. of ODRC Policy No. 53-CLS-10).

It is well established that the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against public interest." *Roach v. Hiland*, No. 5:12-cv-P169-R, 2013 WL 1501424, at *2 (W.D. Ky., Apr. 1, 2013). As detailed above, Defendants determined that Plaintiff should be placed in ERH for a period of up to five years because of the seriousness of his assault on another inmate at NEOCC in 2022. (Doc. 49, Oppy Decl., Ex. B). It was further determined that Plaintiff remains a sufficient security concern and therefore the reduction in his ERH classification was unwarranted, because he cannot safely be managed in a less restrictive environment. Id. at Oppy Declaration at ¶¶ 16, 18, 21, and 24).

Last, the third and fourth factors weigh against issuing an injunction. As noted by Defendants, it is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against public interest." *Roach v. Hiland*, No. 5:12-cv-P169-R, 2013 WL 1501424, at *2 (W.D. Ky., Apr. 11, 2013). Additionally, the public interest is served by Plaintiff remaining in an ERH unit due to his assault on another inmate with a weapon.

Notably, he has failed to demonstrate a substantial likelihood of success on the merits of his claims against Defendants, or to connect those claims to the preliminary injunctive relief he seeks, or to show that he will suffer irreparable harm without that relief. More importantly, Plaintiff requests an Order requiring Defendant to affirmatively correct alleged deficiencies that have not yet been proven and that are – at best – only loosely connected to the claims at issue. "Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief." *Perry v. Warden Warren Corr. Inst.*, No. 1:20-cv-30, 2020 WL 1659875, at *2 (S.D. Ohio Mar. 30, 2020), R&R adopted, 2020 WL 4022225 (S.D. Ohio July 16, 2020) (citing Southern Milk Sales, 924 F.2d at 102); see also Martin, 924 F.2d at 102. For these reasons, Plaintiff's motion for TRO should be denied.

## C. Motion to add Supplemental Pleadings Pursuant to 15(d)

In the proposed supplemental pleading attached to his motion Mr. Brown-Austin alleges that Defendants Jeremy Oppy and Cynthia Davis, have engaged in new acts of retaliation against him by having Mr. Brown-Austin's security classification reduced from extended restrictive housing ("ERH") to "extended restrictive housing transition" ("ERHT"), which is a temporary reduction to determine whether the incarcerated person

is capable of being housed in a lesser restrictive environment. (Doc. 47-1). Mr. Brown alleges that after having been moved to ERHT, he was shortly placed back into ERH due to Defendants Oppy and Davis's retaliation against him for bringing this lawsuit. .Id.

Fed. R. Civ. P 15(a)(2) allows for a party to "amend its pleadings with the opposing party's written consent or the court's leave." Furthermore, "[t]he court should freely give leave when justice so requires." Id. The Court has discretion on whether to grant or deny leave to amend. *Walker v. Joyce*, No. 3:15-cv-136, 2016 U.S. Dist. LEXIS 186248, *2 (S.D. Ohio July 8, 2016) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). In exercising this discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of the amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). A court may also deny leave to amend or supplement a complaint based upon repeated failures to cure deficiencies by amendments previously allowed. *Foman*, 371 U.S. at 182.

Defendants contend that Plaintiff's proposed supplemental claims mirror the retaliation claims currently alleged against Defendants Oppy and Davis. See also *Jones v. Hamilton Cnty.*, No. 23-3002, 2023 U.S. App. LEXIS 29975, 2023 WL 7391704 (6th Cir. Nov. 8, 2023) (amending complaint would be futile when the proposed amended pleading contains "materially the same" allegations in a prior pleading that could not withstand to a motion to dismiss).

Here, Plaintiff's proposed supplemental pleading and his current pleadings both contend that Defendants are improperly keeping him in ERH placement in retaliation for this lawsuit.  As noted by Defendants, "this will now amount to Mr. Brown-Austin's fourth bite at the proverbial apple in this action alone as it relates to his classification stemming from the events that occurred at NEOCC in 2022. Not only is this prejudicial to the defendants, but it is not in the best interests of judicial economy." (Doc.50 at 6).  The undersigned agrees.  In light of the foregoing, Plaintiff's motion to supplement and/or amend his complaint is not well-taken.

## I.        Conclusion

For all of these reasons, **IT IS THEREFORE RECOMMEND THAT** Plaintiff's motion for a TRO (Doc.46) should be **DENIED**, and Plaintiff's motion to add supplemental pleadings against Defendant Oppy (Doc. 47) and Davis should be **DENIED**.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

YUSEF BROWN-AUSTIN,                                    Case No. 1:24-cv-397

    Plaintiff,                                               McFarland, J.
                                                       Bowman, M.J.
    v.

ANNETTE CHAMBERS-SMITH, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).